**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: July 22, 2026
Date Decided: August 10, 2026

Andrew S. Dupre, Esq.
Tammy L. Mercer, Esq.
Samuel E. Bashman, Esq.
Akerman LLP
222 Delaware Avenue, Suite 1710
Wilmington, DE 19807

Ryan D. Stottmann, Esq.
Alex MacLennan, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

RE: *H.I.G. Capital, LLC, et al. v. Kristen Allred, et al.*,
    C.A. No. 2026-0343-BWD

Dear Counsel:

This letter opinion resolves plaintiffs H.I.G. Capital, LLC ("H.I.G"), H.I.G. GP II, Inc. ("H.I.G. GP"), and H.I.G. CCS-CMGC, L.P.'s ("H.I.G. LP," and collectively, "Plaintiffs") Motion for a Preliminary Anti-Suit Injunction (the "Motion"). Through the Motion, Plaintiffs seek to preliminarily enjoin defendants Kristin Allred and Victoria Klein ("Defendants") from taking actions in furtherance of a lawsuit pending in California state court, purportedly filed in contravention of Delaware forum selection provisions in three separate agreements. For the reasons explained below, the Motion is denied.

## I.    BACKGROUND[1]

### A.    Defendants Sell Behavioral Health Facilities To Plaintiffs' Affiliates.

Plaintiff H.I.G. is a Delaware limited liability company and private equity sponsor that provides investment management, advisory, and related services to investment funds.  Verified Compl. for Breach of Contract [hereinafter Compl.] ¶ 15, Dkt. 1.  Plaintiff H.I.G. LP is a Delaware limited partnership and the managing member of nonparty CCS-CMGC Parent GP, LLC ("Wellpath Parent GP"), a Delaware limited liability company and the general partner of nonparty CCS-CMGC Parent Holdings, LP ("Wellpath Parent").  *Id.* ¶¶ 17–19.  Wellpath Parent is a Delaware limited partnership and the ultimate parent of Wellpath Holdings, Inc. ("Wellpath Holdco"), a Delaware corporation.  *Id.* ¶¶ 19–20.  Plaintiff H.I.G. GP is a Delaware corporation and the general partner of H.I.G. LP.  *Id.* ¶ 16.

Defendants Kristin Allred and Victoria Klein and nonparty Michael Doyle owned and operated Alpine Special Treatment Center and Harborview Center Behavioral Health, behavioral healthcare facilities in California.  *Id.* ¶ 28.  On April

---

[1] The following facts are as the Court finds them based on the record presented in connection with the Motion.  The transcript of the July 22, 2026, hearing on the Motion has not been finalized.  Citations to "Draft Tr. __" refer to a draft transcript of the July 22 hearing.

21, 2022, Defendants sold their equity interests in the facilities to Alpine CA Behavioral Health HoldCo, LLC, the "Buyer," with Wellpath Holdco as the "Guarantor" (the "Sale"). *Id.* ¶¶ 28–29; *id.*, Ex. A-1 [hereinafter EPA] at 1. The Sale closed in August 2022. Compl. ¶ 28.

The Sale was effectuated through three agreements: an Equity Purchase Agreement (the "EPA"), a Rollover and Contribution Agreement (the "Rollover Agreement"), and CCS-CMGC Parent Holdings, L.P.'s Second Amended and Restated Agreement of Limited Partnership (the "Partnership Agreement"). *See* EPA; Compl., Ex. B [hereinafter Rollover Agt.]; Transmittal Aff. of Alex MacLennan in Supp. of Defs.' Answering Br. in Opp'n to the Pls.' Mot. for a Prelim. Anti-Suit Inj. [hereinafter MacLennan Aff.], Ex. 4 [hereinafter Partnership Agt.], Dkt. 19. The EPA, the Rollover Agreement, and the Partnership Agreement are governed by Delaware law. EPA § 10.3; Rollover Agt. § 5(h); Partnership Agt. § 14.7.

Under the EPA, the Buyer agreed to pay Defendants an "Estimated Cash Purchase Price" at closing, plus a deferred cash payment of $17.5 million one year later, subject to certain conditions (the "Deferred Payment"). EPA §§ 2.1(a), 2.2(b)(i), 2.3(a); *see id.* Art. 9. The EPA includes a forum selection provision that requires disputes "arising out of or relating to" the EPA to be brought exclusively in

the U.S. District Court for the District of Delaware or the Delaware Court of Chancery:

> THE PARTIES HERETO AGREE THAT ALL DISPUTES, LEGAL ACTIONS, SUITS AND PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT MUST BE BROUGHT EXCLUSIVELY IN A FEDERAL DISTRICT COURT LOCATED IN THE DISTRICT OF DELAWARE OR THE DELAWARE CHANCERY COURT IN NEW CASTLE COUNTY, DELAWARE (COLLECTIVELY THE "DESIGNATED COURTS"). EACH PARTY HERETO HEREBY CONSENTS AND SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE DESIGNATED COURTS. NO LEGAL ACTION, SUIT OR PROCEEDING WITH RESPECT TO THIS AGREEMENT MAY BE BROUGHT IN ANY OTHER FORUM.

*Id.* § 10.21.

Under the Rollover Agreement, Defendants received equity interests in Wellpath Parent. The Rollover Agreement also includes a forum selection provision that requires disputes "arising out of or relating to" the Rollover Agreement to be brought exclusively in the U.S. District Court for the District of Delaware or the Delaware Court of Chancery:

> THE PARTIES HERETO AGREE THAT ALL DISPUTES, LEGAL ACTIONS, SUITS AND PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT MUST BE BROUGHT EXCLUSIVELY IN A FEDERAL DISTRICT COURT LOCATED IN THE DISTRICT OF DELAWARE OR THE DELAWARE CHANCERY COURT IN NEW CASTLE COUNTY, DELAWARE (COLLECTIVELY THE "DESIGNATED COURTS"). EACH PARTY HERETO HEREBY CONSENTS AND SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE DESIGNATED COURTS.

Rollover Agt. § 5(i).

> **B.     The Buyer, Wellpath Holdco, And Defendants Settle A Payment Dispute.**

One year after closing, in August 2023, the Buyer informed Defendants that it would not be paying the Deferred Payment because doing so would result in default. Compl. ¶ 36. Defendants disagreed that the EPA permitted further deferral of the Deferred Payment. *Id.* ¶ 37. To resolve that dispute, on July 1, 2024, the Buyer, Wellpath Holdco, and Defendants entered into a settlement agreement (the "Settlement Agreement"). Compl. ¶ 38; *id.*, Ex. C [hereinafter Settlement Agt.]. The Settlement Agreement governs the "Dispute," defined to mean "a dispute" over "whether the [Deferred] Payment was due as of August 18, 2023, or at times thereafter":

> WHEREAS, the EPA included a provision in section 2.2(b)(i) concerning payment of a portion of the purchase price defined as the "Deferred One Year Cash Payment" in the amount of $17,500,000 ("Payment").
>
> WHEREAS, the EPA also included a provision in section 2.2(d) concerning the possible deferral of the Payment.
>
> WHEREAS, *a dispute has arisen whether the Payment was due as of August 18, 2023, or at times thereafter*, or has been deferred under section 2.2(d) of the EPA (the "Dispute").

*Id.* at 1 (emphasis added). The Settlement Agreement "release[d] and forever discharge[d]" claims "concerning the Dispute." *Id.* ¶ 7. In exchange, the Buyer and

Wellpath Holdco agreed to pay Defendants $250,000 per month until the Deferred Payment, with interest, was satisfied. *Id.* ¶ 5.

The Settlement Agreement, like the EPA and the Rollover Agreement, is governed by Delaware law and contains a forum selection provision. The forum selection provision in the Settlement Agreement requires that a "federal or state court of competent jurisdiction situated in the State of Delaware" "shall be the sole and exclusive forum for the adjudication of" a dispute "arising out of, in connection with, or in any way related to" the Settlement Agreement:

> The Parties agree to venue and jurisdiction in the courts of Delaware for any proceedings, suits or actions arising in whole or in part from this Settlement Agreement. Any dispute of whatever kind or nature whatsoever (whether based in contract, tort, statute, or otherwise) arising out of, in connection with, or in any way related to this Agreement shall be fully and finally adjudicated in a federal or state court of competent jurisdiction situated in the State of Delaware, which court shall be the sole and exclusive forum for the adjudication of such dispute.

*Id.* ¶ 8.

## C. Wellpath Files For Bankruptcy.

Four months after the Settlement Agreement was signed, in November 2024, Wellpath entities, including the Buyer and Wellpath Holdco, filed for bankruptcy in the U.S. Bankruptcy Court for the Southern District of Texas. Compl. ¶ 46.

Defendants filed proofs of claim against the Buyer and Wellpath Holdco related to the Settlement Agreement. *Id.*, Ex. D.

###### D. Defendants Sue Plaintiffs In California State Court.

On July 31, 2025, Defendants filed a lawsuit against Plaintiffs, Wellpath Parent, and Wellpath Parent GP in California state court (the "California Action"). Compl., Ex. E [hereinafter Cal. Compl.]. The complaint in the California Action initially alleged two causes of action: a claim for breach of fiduciary duty and a claim for securities fraud under Sections 25401 and 25504 of the California Corporations Code (the "California Blue Sky Claim"). *Id.* ¶¶ 1–20. In support of the California Blue Sky Claim, the California complaint alleged that on August 19, 2022, and September 1, 2023, Plaintiffs here (defendants in the California Action) "issued securities . . . in the form of limited partnership interests in" Wellpath Parent and, in both instances, concealed that they "did not intend to pay for the business being purchased" and "intended to fabricate false statements regarding the inability to make payments because of loan covenants." *Id.* ¶¶ 10–11.

Plaintiffs removed the California Action to the U.S. District Court for the Southern District of California, arguing that Wellpath Parent and Wellpath Parent GP remained parties to the Texas bankruptcy action. Compl., Ex. F. Plaintiffs then filed a motion to transfer the action to the U.S. District Court for the Southern

District of Texas so that the Bankruptcy Court could decide the "unique[] bankruptcy considerations" relevant to the claims. Compl., Ex. G. Defendants voluntarily dismissed Wellpath Parent and Wellpath Parent GP as defendants in the California Action and moved to remand to California state court. Compl., Ex. H.

On February 2, 2026, the U.S. District Court for the Southern District of California remanded the action to California state court. Compl., Ex. J. Defendants dismissed their breach of fiduciary duty claim without prejudice on April 8. MacLennan Aff., Ex. 29.

### E. Procedural History

On March 12, 2026, Plaintiffs initiated this action through the filing of a Verified Complaint (the "Complaint"). Count I of the Complaint alleges that Defendants breached the forum selection provision in the Settlement Agreement by filing the California Action. Compl. ¶¶ 74–86. Count II alleges that Defendants breached the forum selection provisions in the EPA and the Rollover Agreement by filing the California Action. *Id.* ¶¶ 87–98. Count III seeks an order of specific performance directing Defendants to comply with the forum selection provisions in the Settlement Agreement, EPA, and Rollover Agreement. *Id.* ¶¶ 99–106. Count IV seeks a declaratory judgment that Defendants must litigate their claims in Delaware. *Id.* ¶¶ 107–12.

Concurrently with their Complaint, Plaintiffs sought expedition and filed the Motion. The Court heard oral argument on July 22.

## II.   ANALYSIS

Plaintiffs seek a preliminary anti-suit injunction prohibiting Defendants from taking actions in furtherance of the California Action or from pursuing the claim therein in a non-Delaware forum. "Anti-suit injunctions are 'not granted lightly' in this [C]ourt." *SPay, Inc. v. Stack Media Inc.*, 2021 WL 1109181, at *2 (Del. Ch. Mar. 23, 2021); *see also Pentwater Cap. Mgmt. LP v. Kaz*, 2022 WL 1052347, at *4 (Del. Ch. Apr. 8, 2022) ("[A]nti-suit injunctions 'should be entered sparingly,' and 'only where there is clear evidence of threatened irreparable harm, equity supports the injunction, the relief will be effective, and comity has been fully exercised.'"). "A party seeking a preliminary injunction in this court must demonstrate: (1) a reasonable likelihood of success on the merits of its claim; (2) it would be irreparably harmed if the court were to deny relief; and (3) the balance of hardships tips in its favor." *SPay*, 2021 WL 1109181, at *2.

Plaintiffs argue that they are likely to succeed on the merits of their breach of contract and declaratory judgment claims because forum selection provisions in the Settlement Agreement, the EPA, and the Rollover Agreement require Defendants to litigate the California Blue Sky Claim in a Delaware forum. Defendants raise four

primary arguments in response.  First, they argue that the California Blue Sky Claim does not fall within the scope of the three forum selection provisions.  Second, they argue that the forum selection provisions in the EPA and Rollover Agreement are unenforceable.  Third, they argue that Plaintiffs, as nonparties to the relevant agreements, lack standing to enforce the forum selection provisions.  And fourth, they argue that the Motion should be denied on laches grounds.

As set forth below, Plaintiffs have not established that they are likely to succeed on the merits of their claims.

**A.  The California Blue Sky Claim Does Not Fall Within The Scope Of The Settlement Agreement's Forum Selection Provision.**

Plaintiffs' primary argument is that the forum selection provision in the Settlement Agreement requires Defendants to litigate the California Blue Sky Claim in a Delaware forum.  This argument fails because the California Blue Sky Claim does not fall within the scope of the Settlement Agreement's forum selection provision.

"The courts of Delaware defer to forum selection clauses and routinely 'give effect to the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation.'" *Ashall Homes Ltd. v. ROK Ent. Gp. Inc.*, 992 A.2d 1239, 1245 (Del. Ch. 2010) (quoting *Troy Corp. v. Schoon*, 2007 WL 949441, at *2 (Del. Ch. Mar. 26, 2007)).  But a forum selection

provision will not govern unless the claim in question falls within its scope. Forum selection clauses, like other contractual provisions, "are interpreted consistent with the principle that '[w]here the [contractual language] is clear and unambiguous, courts [should] interpret the contract in accordance with the ordinary and usual meaning of the language.'" *In re Bay Hills Emerging P'rs I, L.P.*, 2018 WL 3217650, at *5 (Del. Ch. July 2, 2018) (alteration in original) (quoting *Grosvenor Orlando Assocs. v. HCP Grosvenor Orlando LLC*, 2013 WL 3215704, at *2 (Del. Ch. June 26, 2013)). "[T]he court will enjoin a party from prosecuting an action elsewhere based on a forum selection clause only where 'the language selected makes it absolutely clear the parties believed that [this] court should forever be the only forum for resolving a dispute.'" *SPay*, 2021 WL 1109181, at *2 (quoting *Eisenbud v. Omnitech Corp. Sols., Inc.*, 1996 WL 162245, at *2 (Del. Ch. Mar. 21, 1996)).

Paragraph 8 of the Settlement Agreement mandates that a "federal or state court of competent jurisdiction situated in the State of Delaware" "shall be the sole and exclusive forum for the adjudication of" a dispute "arising out of, in connection with, or in any way related to th[e] [Settlement] Agreement." Settlement Agt. ¶ 8. The Settlement Agreement itself is limited to resolving the "Dispute," defined to mean the sole issue of "whether the [Deferred Payment under the EPA] was due as

of August 18, 2023, or at times thereafter, or has been deferred under section 2.2(d) of the EPA[.]" *Id.* at 1. The only claims released under the Settlement Agreement are those "concerning the Dispute." *Id.* ¶ 7.

The California Blue Sky Claim does not arise out of, nor is it in connection with or in any way related to, the narrow payment dispute resolved through the Settlement Agreement. The California Blue Sky Claim concerns the issuance of securities in August 2022 and September 2023 "by means of . . . an untrue statement of material fact." Cal. Compl. ¶¶ 10–11; Cal. Corp. Code § 25401. Whether Plaintiffs made false statements in connection with security issuances in 2022 and 2023 is not "in any way related to" a Settlement Agreement in 2024 that resolved only whether the Deferred Payment under the EPA was due on August 18, 2023, or if further deferral was permitted under Section 2.2(d) of the EPA. Settlement Agt. at 1.

As this Court has explained, "[b]road forum selection clauses . . . which expressly cover . . . all claims between the contracting parties that 'arise out of' or 'relate to' a contract, apply not only to claims dealing directly with the terms of the contract itself, but also to 'any issues that touch on contract rights or contract performance.'" *ASDC Hldgs., LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Tr.*, 2011 WL 4552508, at *5 (Del. Ch. Sep. 14, 2011). But the

California Blue Sky Claim arises from statements allegedly made in connection with issuances that predated the Settlement Agreement and therefore does not "touch on" any rights under, or the performance of, the Settlement Agreement.

Because the California Blue Sky Claim is not a dispute "arising out of, in connection with, or in any way related to th[e] [Settlement] Agreement," it does not fall within the scope of the Settlement Agreement's forum selection provision.

**B.    Forum Selection Provisions In The EPA And The Rollover Agreement Are Unenforceable Here.**

Plaintiffs argue that even if the Settlement Agreement's forum selection provision does not apply, forum selection provisions in the EPA and the Rollover Agreement still support an anti-suit injunction. Plaintiffs are not likely to succeed on the merits of this claim because the forum selection provisions in the EPA and the Rollover Agreement purport to choose forums that lack subject matter jurisdiction to decide the California Blue Sky Claim.

Forum selection clauses "are presumptively valid and should be specifically enforced unless the resisting party clearly show[s] that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud and overreaching." *Sylebra Cap. P'rs Master Fund, Ltd. v. Perelman*, 2020 WL 5989473, at *10 (Del. Ch. Oct. 9, 2020) (alterations in original) (quoting *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1146 (Del. 2010)). However, it is also "settled law

that parties may not confer subject matter jurisdiction by agreement." *Thompson v. Lynch*, 990 A.2d 432, 434 (Del. 2010).

Assuming, without deciding, that the California Blue Sky Claim falls within the scope of the forum selection provisions in the EPA or Rollover Agreement, those provisions cannot be enforced here because they choose the "Federal District Court located in the District of Delaware or the Delaware Chancery Court" as the "exclusive" forum for bringing a claim. EPA § 10.21; Rollover Agt. § 5(i). That is problematic because neither the U.S. District Court for the District of Delaware nor the Delaware Court of Chancery has subject matter jurisdiction over the California Blue Sky Claim.

As the Delaware Supreme Court has previously held, "neither the Court of Chancery nor the parties to a dispute can confer equitable jurisdiction where it is otherwise lacking." *El Paso Nat. Gas Co. v. TransAmerican Nat. Gas Corp.*, 669 A.2d 36, 39 (Del. 1995), *overruled on other grounds by Nat'l Indus. Gp. (Hldg.) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373 (Del. 2013). "Jurisdiction over a party or subject matter, or venue of a cause, can not be determined by private bargaining where there is no other basis for such jurisdiction or venue." *Id.* (citation omitted).

The U.S. District Court for the Southern District of California remanded the California Action to state court for lack of subject matter jurisdiction, and the parties

appear to agree that there is no federal jurisdiction over the California Blue Sky Claim. *See* Compl., Ex. J at 7 (remanding the California Action because the "claims are matters of pure state law and do not depend upon the [Wellpath bankruptcy]"). Plaintiffs argue instead that the Court of Chancery has subject matter jurisdiction over the California Blue Sky Claim. It does not.

"The Delaware Court of Chancery is a court of equity. It has only that limited jurisdiction that the Court of Chancery in England possessed at the time of the American Revolution, or such jurisdiction as has been conferred upon it by the Delaware General Assembly." *El Paso*, 669 A.2d at 39. This Court "maintains subject matter jurisdiction 'only when (1) the complaint states a claim for relief that is equitable in character, (2) the complaint requests an equitable remedy when there is no adequate remedy at law or (3) Chancery is vested with jurisdiction by statute.'" *Smith v. Scott*, 2021 WL 1592463, at *14 (Del. Ch. Apr. 23, 2021) (quoting *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *4 (Del. Ch. June 27, 2019), *aff'd*, 249 A.3d 375 (Del. 2021) (TABLE)).

The California Action does not allege an equitable claim. The sole remaining claim is the California Blue Sky Claim, a legal claim based on a statute. At oral argument, Plaintiffs argued for the first time that jurisdiction in this Court should be assessed at the time the California Action was filed, when the complaint in that

action alleged an equitable claim for breach of fiduciary duty. Draft Tr. at 23:11–24:1. Even if Plaintiffs had not waived that argument by failing to brief it, it misses the mark. Defendants could not create jurisdiction here by reasserting the breach of fiduciary duty claim; they dismissed that claim because the entity defendants under that claim remain parties in the bankruptcy action and are subject to an automatic stay of litigation. MacLennan Aff., Ex. 29.

The California Action does not seek equitable relief. At oral argument, Plaintiffs argued for the first time that the most appropriate relief for the California Blue Sky Claim is rescission. Draft Tr. at 16:17–17:2. Even if Plaintiffs had not waived that argument by failing to brief it, it ignores that the California Action seeks only money damages. *See* Reply Br. in Supp. of Pls.' Mot. for a Prelim. Anti-Suit Inj. at 16, Dkt. 25 ("Defendants are not seeking [rescission] of any preferred units they received or damages as measured under California's Blue-Sky laws.").

This Court also lacks statutory jurisdiction over the California Blue Sky Claim. At oral argument, Plaintiffs argued that this Court has statutory jurisdiction over the California Blue Sky Claim under 6 *Del. C.* § 18-111. Draft Tr. at 13:6–15, 15:5–13. Even if Plaintiffs had not waived this argument by failing to brief it, it is wrong. Section 18-111 states:

> Any action to interpret, apply or enforce the provisions of a limited liability company agreement, or the duties, obligations or liabilities of a limited liability company to the members or managers of the limited liability company, or the duties, obligations or liabilities among members or managers and of members or managers to the limited liability company, or the rights or powers of, or restrictions on, the limited liability company, members or managers, or any provision of this chapter, or any other instrument, document, agreement or certificate contemplated by any provision of this chapter, may be brought in the Court of Chancery.

6 *Del. C.* § 18-111. The California Blue Sky Claim is not a claim to "interpret, apply or enforce" a limited liability company agreement or the "duties, obligations or liabilities" of a limited liability company or its members or managers. Nor is it a claim to determine the "rights or powers of, or restrictions on," a limited liability company, its members or managers, or any provision of Delaware's Limited Liability Company Act. The California Blue Sky Claim is, instead, a California state law securities fraud claim. The fact that the claim in some way concerns a Delaware limited liability company does not confer jurisdiction under Section 18-111. *See, e.g.*, *Sun Life Assurance Co. of Canada-U.S. Operations Hldgs., Inc. v. Gp. One Thousand One, LLC*, 206 A.3d 261, 265–70 (Del. Super. Ct. 2019) (concluding the

Court of Chancery lacked jurisdiction under Section 18-111 over a claim for breach of a stock purchase agreement with a limited liability company).[2]

Finally, Plaintiffs suggest this Court could exercise subject matter jurisdiction over the California Blue Sky Claim if Defendants brought it as a counterclaim in this action. Because such a counterclaim would dramatically expand the otherwise narrow scope of this proceeding, which concerns only the applicability of forum selection provisions to the California Action, I would be disinclined to extend subject matter jurisdiction under the clean-up doctrine.

If the Court were to grant an anti-suit injunction based on the forum selection provisions in the EPA or the Rollover Agreement, Defendants could not bring the California Blue Sky Claim in any jurisdiction, since neither designated forum has jurisdiction over the claim. As a result, those provisions cannot be enforced under these circumstances. *See El Paso*, 669 A.2d at 41; *Troy*, 2007 WL 949441, at *3; *see also ASDC Hldgs.*, 2011 WL 4552508, at *4 (explaining that a forum selection

---

[2] The Court's lack of subject matter jurisdiction under Section 18-111 distinguishes this case from *Village Green Holding, LLC v. Holtzman*, 2018 WL 4849964 (Del. Ch. Oct. 5, 2018). There, the Court enforced a forum selection provision requiring claims to be litigated in "any United States District Court or Delaware state Chancery court" because the Court of Chancery had subject matter jurisdiction over the claims at issue—which required interpreting a limited liability company agreement and redemption agreement—under Section 18-111.

clause was "unenforceable as to the claims . . . because the parties impermissibly had attempted to confer by agreement subject matter jurisdiction on the Court of Chancery over all claims between the parties, legal and equitable").

### C. Plaintiffs' Motion For A Preliminary Anti-Suit Injunction Is Denied.

Because Plaintiffs have failed to demonstrate that they are likely to succeed on the merits of their claims for breach of contract or declaratory judgment, I need not further consider whether Plaintiffs face imminent, irreparable harm or whether the balance of the equities supports entry of a preliminary anti-suit injunction. *See Next Level Commc'ns, Inc. v. Motorola, Inc.*, 834 A.2d 828, 856 (Del. Ch. 2003) (declining to decide the existence of irreparable harm or the balance of equities where plaintiffs failed to show a probability of success on the merits).

## III. CONCLUSION

For the reasons explained above, the Motion is DENIED.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor

cc:    All counsel of record (by File & ServeXpress)